UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUCIOUS STOVALL** | **CIVIL ACTION** |
| **VERSUS** | **NO:     16-17475** |
| **CAROLYN W. COLVIN,**<br>**ACTING COMMISSIONER OF THE**<br>**SOCIAL SECURITY ADMINISTRATION** | **SECTION: "H" (4)** |

## REPORT AND RECOMMENDATION

### I.   Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security, pursuant to **Title 42 U.S.C. § 405(g)**.  The Commissioner denied Lucious Stovall's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits.

The matter was referred to the undersigned United States Magistrate Judge, pursuant to **Title 28 U.S.C. § 636(b)** and **Local Rule 19.02E(b)**, for the submission of Proposed Findings and Recommendations.

### II.   Factual Summary

The claimant, Lucious Stovall ("Stovall"), is a thirty-two-year-old male who completed high school and worked  in construction, as a fast food prep, as a forklift operator, and as a fire watcher. Tr. 75-76.  Stovall protectively filed an application for SSI and Disability Insurance Benefits, alleging disability on August 13, 2105, due to Major Recurrent Depressive Disorder, Post-Traumatic Stress Disorder ("PTSD"), and for being status post repair of a recurrent hernia defect. R. Doc. 8, p. 2.

On February 3, 2015, Stovall had a hearing before Administrative Law Judge ("ALJ") Michael Cheek in New Orleans, Louisiana. R. Doc. 7-2, Tr. 44-80.  After the hearing, ALJ Cheek left the agency without having rendered a decision.  As a result, another hearing was conducted on

August 13, 2015, by ALJ Thomas Henderson who denied the request for benefits on August 26, 2015. R. Doc. 7-2, Tr. 23-43.  On August 26, 2015, the ALJ issued an opinion, finding that Stovall was not entitled to SSI or Disability Insurance Benefits. R. Doc. 7-2, Tr. 38.  Stovall appealed the finding and the Appeals Council affirmed the ALJ's decision. R. Doc. 7-2, Tr. 1-7.

Stovall seeks review of the denial of his claim for benefits, namely the ALJ's opinion. R. Doc. 1. He alleges that the ALJ's opinion is not based on substantial evidence because (1) the ALJ failed to give Stovall's treating source opinion controlling weight, or at least great weight, (2) the ALJ erred because he failed to find Stovall's Medically Equal Listing 12.04 and now, additionally 12.15, and (3) the ALJ erred in determining Stovall's residual functional capacity. R. Doc. 8.

In contrast, the Commissioner contends that (1) the ALJ properly weighed the opinion of Douglas Porter, M.D. ("Dr. Porter") and that substantial evidence supports the determination to give little weight to the opinion, (2) Stovall does not meet the requirement of presumptive disability under Listing 12.04 or 12.15, nor does either listing apply retroactively, and (3) the ALJ's Residual Functional Capacity was based upon substantial evidence. R. Doc. 9.

### III.     Standard of Review

Under Title 42 U.S.C. § 405(g), the role of this Court on judicial review is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the secretary.  *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981).  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant, such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act (the "Act"), as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as meaning "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such

as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *See Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).  If the Secretary meets this burden, the burden shifts back to the claimant to show that he cannot perform this alleged work. *Id.*

### IV.     Controlling Weight to Stovall's Treating Physician

Stovall contends that the ALJ failed to follow the proper legal standard when he failed to give controlling weight, or at least great weight to the opinion of Stovall's treating physician, Dr. Porter. R. Doc. 8, p. 4.  It is the Court's position that the ALJ properly weighed the opinion of Dr. Porter, and his opinion was based on substantial evidence.

The physician may offer an opinion, which reflects a judgment about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); 20 C.F.R.§ 404.1527(a)(2).  The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)); *Perez v. Schweike*, 653 F.2d 997, 1001 (5th Cir. 1981) ("[T]he opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight.").

Good cause may permit an ALJ to discount the weight of a treating physician, relative to other experts, where the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g.*, *Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir. 1999). For the ALJ to give deference to a medical opinion, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1086 (5th Cir. 1981).

Moreover, the opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Newton v. Apfel*, 209 F.3d 448, 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). The Commissioner is "'free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The relevant criteria for an ALJ to consider in weighing a medical opinion includes: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

The record shows that the ALJ conducted an exhaustive analysis of the medical records. Stovall contends that, because Dr. Porter treated him on at least five occasions at the time of the hearing, his opinion that Stovall suffers with Major Depression and Post-Traumatic Stress Disorder

5

is well supported by the record as a whole, including other mental health professionals. Stovall contends that his Global Assessment of Functioning ("GAF") indicated that he had at least 50 serious symptoms or a serious impairment. Further, Stovall contends that Dr. Porter's opinion is well supported by the record and by the opinions of several other mental health professionals, including Licensed Clinical Social Worker Roland Fryou, Psychiatrist Dr. Eric Kramer, Licensed Clinical Social Worker Danita Muse, and Psychologist Dr. Donna Mancuso.[1] As a result, Stovall contends that Dr. Porter's opinion should have been accorded great weight, which would have resulted in a more restricted functional limitation. Stovall, therefore, contends that the ALJ's decision is not based upon substantial evidence, and the matter should be remanded for further consideration of this issue.

In response, the Commissioner contends that the ALJ properly weighed the opinion of Dr. Porter, such that the ALJ's decision is based upon substantial evidence. The Commissioner points out that, while in February 2014 Stovall exhibited an anxious, depressed mood, seven months later, Dr. Porter indicated, in a mental status exam, that Stovall was fully oriented, alert, showed appropriate affect, had a euthymic mood, had logical thought processes, unremarkable perception, fair concentration, intellect, insight, and judgment. R. Doc. 9, p. 5. The Commissioner contends that, while Stovall points to other providers as support for Dr. Porter's opinion, he only selectively pointed to the subjective components of their evaluations and not the objective components. As such, the Commissioner contends that the objective components were consistent with Dr. Porter's September 17, 2014, opinion. R. Doc. 7-12, Tr. 810-814.

---

[1] Brief in Support of Claim for Relief, R. Doc. 8, p. 5.

The ALJ conducted an exhaustive analyses of the mental health records. In the opinion, the ALJ noted that, in April 2014, Stovall underwent a behavior health assessment, which resulted in diagnosis of major depressive disorder, recurrent, moderate and PTSD. The ALJ noted that, seven months later, Stovall sought treatment for abdominal pain, and at that time, Stovall's psychiatric evaluation indicated that he had a normal mood and affect. R. Doc. 7-2. During that time, Stovall reported that he had no previous psychiatric treatment and explained that he did not even attend previous appointments in 2013 because he felt better. *Id.* The ALJ noted that, during the November 26, 2013, treatment, Stovall's mental status evaluation showed favorable results with a normal mood and a GAF score of 56, indicating only moderate difficulty in social and occupational functioning. *Id.*

Almost a year later, Stovall returned for treatment, and his mood changed and his affect was restricted. *Id.* It seems that, from November 2013 to September 2014, Stovall did not seek any mental health treatment. *Id.* Also, the ALJ noted that, in August 2014, Stovall ran out of medication, which resulted in a decline in his mental health, increased crying spells, decreased sleep and inability to complete tasks, with a declining GAF score of 50, indicating that he was seriously impaired. *Id.* In addition, the ALJ noted that, at that time, Dr. Porter discussed the benefits of counseling; however, Stovall refused counseling, but yet, requested a note from the doctor for his disability case. *Id.*

Although not referenced by the ALJ, the Court notes that Therapist Dr. Eric Kramer, on January 6, 2014, found that Stovall's mood was normal, he had a good attitude, and his affect was appropriate. R. Doc. 7-12, 806. Also, Dr. Donna Mancuso ("Dr. Mancuso") evaluated Stovall on February 20, 2015, and during the evaluation, Stovall's speech was in normal limits, he was cooperative, but a little shaky in the arms and legs, his orientation was within normal limits, but

his mood was "so-so; not so good," and his affect was anxious.  Dr. Mancuso noted that Stovall was not having auditory or visual hallucinations, and his memory, attention and concentration were in normal limits.  Stovall was diagnosed with moderate limitation at that time, and according to the medicals, Stovall was taking his medications. R. Doc. 7-12, Tr. 869-872.  This finding is consistent with the ALJ's finding.

Additionally, in April 2013, Roland Fryou diagnosed Stovall with Major Depressive Disorder of a moderate severity, which is consistent with the finding of the ALJ. R. Doc. 7-7, Tr. 417.  While Dr. Mancuso found Stovall to be moderately to markedly impaired in several areas, this assessment occurred after he ran out of his medications. Tr. 861-864.  The ALJ's finding was not inconsistent with the evidence of record.  In fact, the ALJ reasoned that he gave little weight to Dr. Porter's December 8, 2014, letter that Stovall's depression was exacerbated because of news reports of police shootings because it was not consistent with earlier evidence.  In discounting the opinion, the ALJ noted that earlier evaluations by Dr. Porter showed that Stovall had concentration consistently rated as fair. R. Doc. 7-2.

Furthermore, the ALJ noted that the mental health treatment records showed significant gaps in treatment, and the records also indicated that Stovall's condition was not as severe as to warrant in-patient psychiatric hospitalization. R. Doc. 7-2.  The ALJ also noted Stovall's refusal to submit to counseling as a means of remedying the condition. *Id.*  In considering the source, the medical evidence, the consistency of the opinion with the record as a whole, and the lapse of continued medication use, the Court finds that the ALJ's decision to give little weight to the December 8, 2014, opinion of Dr. Porter is based upon substantial evidence. R. 7-2, Tr. 35-36.

8

## V. Medical Listing of 12.04 and 12.15

Next, Stovall contends that the ALJ erred when he concluded that Stovall did not meet the Listing level for 12.04, which required that only four symptoms persist. Stovall also contends that, if the case is remanded, he could now also be found to meet Listing 12.15 for trauma and stressor related disorders, a new listing created in 2017 well after his final decision was rendered.

The Commissioner contends that the ALJ properly considered listings 12.01, 12.04 and 12.06. In addition, the Commissioner pointed out that, in 2017, the requirements of listing 12.04 were altered and added a new listing concerning trauma and stress related disorders, listing 12.15. The Commissioner contends that these new provisions are not applicable because the ALJ's decision was final on October 14, 2016, the day the Appeals Council denied review.

The ALJ found that Stovall was mildly restricted in his daily activities. R. Doc. 7-2, Tr. 29. Further, the ALJ noted Stovall's testimony that he does not drive, but that he borrowed his brother's car and drove to the hearing because it was important. *Id.* Stovall testified that he had not driven in over one year before the 2015 hearing. *Id.* Moreover, the ALJ noted that Stovall's explanation for not driving was because he was fearful of police stopping him. *Id.* The ALJ noted that Stovall had a good ability to complete personal hygiene tasks, shop and cook. *Id.* Also, the ALJ noted that Stovall enjoyed watching TV, but avoided violent shows due to his experience with the police. *Id.*

In addition, the ALJ noted Stovall's visit for the consultative physical exam in which Stovall reported that he could perform all activities, including driving. *Id.* The ALJ noted that the Functional Report indicated that it takes Stovall longer to attend to his personal hygiene tasks, but there was no mention of assistance being needed. *Id.* Also in the Functional Report, Stovall described himself as social, noting that he talks on the telephone, plays card games and board

games four times a week. *Id.* The ALJ also noted that Stovall regularly attends church and that he did not report any problem getting along with family, friends, neighbors or others. *Id.* Further, the ALJ noted that Stovall described himself as friendly and indicated that he gets along well with authority figures, except the police. Stovall denied ever being fired or laid off from a job due to relational issues. *Id.*

Regarding Stovall's concentration, persistence or pace, the ALJ described Stovall's difficulties as moderate. The ALJ noted that Stovall did not need reminders or assitance to go places, had a good attention span when not experiencing pain, was able to finish tasks, follow instructions, both written or spoken, pay bills, count change, handle a savings and checking account, and responded appropriately to questions during the hour long hearing. *Id.*

Moreover, the ALJ also noted that Stovall did not experience any episodes of decompensation, nor was there any evidence that Stovall experienced an exacerbation of symptoms or signs that resulted in a significant alteration of medication or sustained loss of adaptive functioning. *Id.* As a result, the ALJ found that, because Stovall's mental impairments did not cause at least two "marked limitations" or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria were not satisfied. The ALJ also considered whether the "paragraph C" criteria were satisfied, finding that the evidence fails to establish the presence of "paragraph C" criteria because there was no establishment of repeated episodes of decompensation, propensity toward decompensation, or a need for a highly supportive living arrangement. *Id.*

In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met and (2) whether specified functional restrictions are present ("paragraph B" criteria). *See* 20

C.F.R. § 404.1520a.  The claimant's mental impairment must satisfy both paragraph A and paragraph B criteria to meet the listings.  A claimant who satisfies the diagnostic criteria contained in the listing 12.04 (B) for "Affective Disorders" must be found disabled if his condition results in two or more of the following functional limitations:

1. Marked restriction in activities of daily living;

2. Marked difficulties in maintaining social functioning;

3. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (B).  The purpose of the functional criteria contained in paragraph B is to measure the severity of the claimant's impairment. *Id.* at § 12.00 (C).  These criteria "represent functional areas deemed essential to work." *Id.* at § 12.00 (A).  For this reason, a claimant whose mental impairment results in the requisite functional restrictions meets the listing and, accordingly, "is presumed to be unable to work." *Id.*

Even if a claimant's mental impairment does not meet the criteria specified in the listings, he must be found disabled if his condition "is equal to" a listed impairment. *See* 20 C.F.R. § 404.1520(d).  In evaluating a claimant with more than one impairment, the Commissioner must consider "whether the combination of . . . impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a); *see also Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987).  The claimant's illnesses "must be considered in combination and must not be fragmented in evaluating their effects." *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985) (quoting

*Dressel v. Califano*, 558 F.2d 504, 508 (8th Cir. 1977)). In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether his "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3).

In this case, the ALJ determined that Stovall's complaints of PTSD and Major Recurrent Depressive Disorder could cause the symptoms he alleged, but Stovall's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.

The medical evidence does not support Stovall's contention that he met the 12.04 listing. The evidence establishes that Stovall submitted to Dr. Porter on December 8, 2014, for an evaluation. Tr. 860. Dr. Porter noted Stovall's diagnoses and what appears to be Stovall's report of experiencing flashbacks of his own shooting because he watched the news. The correspondence did not make any recommendation to Stovall to not watch the news if it was a trigger, and it only listed the medications that he was on. *Id.*

In addition, Stovall was also evaluated by Dr. Mancuso on February 20, 2015. Dr. Mancuso found that Stovall was able to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. Also, Dr. Mancuso found that Stovall was moderately limited in his ability to understand and remember complex instructions, carry out complex instructions, and making judgments on complex work-related decisions. Tr. 862.

Furthermore, Dr. Mancuso also found that Stovall was moderately limited in his ability to interact with the public, supervisors, and coworkers. She also found that Stovall was moderately limited in his ability to usual work situations and to changes in the routine work setting. Tr. 863. Dr. Mancuso noted that, on this visit, Stovall was anxious and shaking his legs. Stovall told her

that he had been isolating himself, being paranoid that the police would harm him. *Id.* Contrary to Stovall's representation, he was only moderately limited in seven of the ten areas. Stovall was neither markedly or extremely limited in any area. However, Dr. Mancuso did draw an arrow pointing toward markedly, but it is not clear whether she intended it to mean that Stovall's level could increase to markedly or close to markedly for the areas concerning his ability to interact. Therefore, the Court finds that the ALJ's conclusion that Stovall did not meet listing level 12.04 is based upon substantial evidence.

Next, Stovall alleges that the case should be remanded because he could be found to meet listing level 12.15, which became effective after his claim was decided. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1§§ 12.04, 12.15. Title 20 CFR § 404.984(c) provides that, after the Appeals Council receives the briefs or other written statements, or the time allowed (usually 30 days) for submitting them has expired, the Appeals Council will either issue a final decision of the Commissioner based on the preponderance of the evidence affirming, modifying, or reversing the decision of the Administrative Law Judge, or remand the case to an administrative law judge for further proceedings, including a new decision.

In this case, Stovall's Appeals Council issued a final decision affirming the ALJ's decision on October 14, 2016. As a result, Stovall's claim was not pending on January 1, 2017, and as such, the new listing level 12.15 does not apply to Stovall's claim. Therefore, the request to remand for consideration of the application of 12.15 is **DENIED**.

## VI.  Stovall's Residual Functional Capacity ("RFC")

Stovall also claims that the ALJ's RFC is not based upon substantial evidence because, as a result of Stovall's mental condition, he is much more limited than determined. Stovall contends that he should have been found off task at least twenty percent of a work day. If Stovall was found

13

to be off task for twenty percent of a work day, then consistent with the Vocational Expert's opinion, Stovall would not be able to maintain positions on a full-time basis. Tr. 79.

The Commissioner contends that the record does not support the limitation, nor does Stovall cite any objective medical evidence imposing a limitation other than his attorney's lay opinion included in the hypothetical question posed to the Vocational Expert. Tr. 79. The Commissioner contends that substantial evidence supports the RFC, limiting Stovall to simple, routine, repetitive tasks in an uncrowded work setting with no ongoing interaction with the public and without close coordination with coworkers and supervisors.

The ALJ found that Stovall has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except that he had the residual functional capacity to lift and/or carry ten pounds frequently and twenty pounds occasionally. Tr. 31. The ALJ found that Stovall could stand and/or walk and sit for six hours in an eight hour workday with normal breaks. *Id.* In addition, it was determined that Stovall could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, crawling, crouch and kneel. *Id.* The ALJ further found that Stovall could perform work that avoids concentrated exposure to hazardous machinery or unprotected heights, work limited to simple, routine repetitive tasks with no ongoing public interaction beyond brief encounters. *Id.*

In reviewing the record, the Court finds that the ALJ's RFC is based upon substantial evidence. The Court is not persuaded by Stovall's contention that Dr. Mancuso's finding of moderate limitation in areas of social interaction should mean that he would be off task for at least twenty percent of a work day. In fact, the record contradicts that suggestion because Dr. Mancuso found that Stovall would be able to understand, carry out, and make appropriate judgments of simple work-related tasks and moderately execute and understand complex instructions. The ALJ

weighed and considered the testimony of Stovall and found that it was not fully credible, and there is no evidence to the contrary. Therefore, the Court finds that the RFC finding is based upon substantial evidence.

**VII. Recommendation**

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Lucious Stovall Supplemental Security Income and Disability Insurance Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 21st day of September 2017

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**